RENDERED: MARCH 19, 2026
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0091-DG

DOUGLAS HODGE                                                          APPELLANT

V.
ON REVIEW FROM COURT OF APPEALS
NO. 2021-CA-1512
KENTON CIRCUIT COURT NO. 21-CI-00814

KENTUCKY PAROLE BOARD                                                  APPELLEE

AND

2023-SC-0364-DG

KENTUCKY PAROLE BOARD                                                  APPELLANT

V.
ON REVIEW FROM COURT OF APPEALS
NO. 2022-CA-0135
FRANKLIN CIRCUIT COURT NO. 20-CI-00834

TIMOTHY SHANE                                                          APPELLEE

**OPINION OF THE COURT BY JUSTICE BISIG**

**<u>REVERSING HODGE V. PAROLE BOARD</u>**
**<u>AFFIRMING PAROLE BOARD V. SHANE</u>**

This Opinion combines two appeals involving the Kentucky Parole Board and the procedures it uses to revoke parole. After parole was revoked for Douglas Hodge and Timothy Shane, two separate Court of Appeals panels reached conflicting conclusions regarding whether the Kentucky Parole Board

is constitutionally and statutorily authorized to delegate its responsibility of conducting final evidentiary hearings to Administrative Law Judges (ALJs) prior to revoking parole.

Having granted discretionary review and considered oral arguments, we conclude that the Parole Board is authorized to delegate the final hearing requirement to ALJs.

**FACTS AND PROCEDURAL HISTORY**

**Douglas Hodge**

In 2012, Douglas Hodge was convicted of a variety of non-violent offenses and sentenced to twenty years in prison. The Parole Board recommended him for parole in February 2020 and six months later, Hodge became noncompliant with his parole requirements. Hodge was paroled to his father's home, but due to difficulties living together, Hodge moved in with his cousin. Hodge's parole officer attempted to visit him at the address he provided, but he was not there. She left a tag on the door instructing Hodge to report to her office. It was later revealed that the parole officer visited the wrong apartment.

Later that day, the parole officer received a call from the resident of that apartment who informed her that he did not know Hodge and that Hodge did not live there. Hodge called the parole officer later that day, but he would not tell her where he was living. The parole officer directed him to report to her in person the next morning, but Hodge told her he would report to her several days later instead. Ultimately, Hodge failed to report to her at either time. A

2

counselor of a treatment program Hodge was enrolled in informed the parole office that Hodge stated he was in Ohio.

The parole officer obtained a parole violation report on August 31 due to Hodge's refusal to inform her of his current residence. The warrant charged Hodge with violating parole by absconding, failing to report a change in his home address, and leaving the state without permission.

ALJ Cynthia Elliot conducted a preliminary hearing and heard testimony from Hodge, his parole officer, and Hodge's treatment center counselor. Hodge was represented by counsel and given the opportunity to testify, submit evidence, and to call and cross-examine witnesses. The ALJ made numerous findings of facts in concluding there was probable cause that Hodge absconded and failed to report his change of address. However, ALJ Elliot did not find that probable cause supported the contention that Hodge violated his parole by failing to report a change in address.

The final evidentiary hearing was conducted by a different ALJ, John Marcus Jones, who made extensive findings of fact regarding the parole violations. The ALJ also considered mitigating evidence Hodge presented. In his written findings, ALJ Jones concluded that Hodge absconded by a preponderance of the evidence, but that the evidence did not support the alleged violation of failing to report a change in home address. At the request of Hodge's counsel, the ALJ left the record open for Hodge to submit a

treatment plan in mitigation.[1]  ALJ Jones referred the matter to the Parole Board for a final decision.

The Parole Board issued written findings on December 17, 2020. Without taking any evidence of its own, and relying entirely on the record created by the ALJs, the Parole Board found, by a preponderance of the evidence, that Hodge violated the conditions of supervision by absconding and that, per Kentucky Revised Statute (KRS) 439.3106(1), Hodge's failure to comply constituted a significant risk to the community and that he cannot be appropriately managed in the community.  In reaching its decision, the Parole Board noted that Hodge had been on parole supervision twice before and was aware of the requirements to make himself available for supervision and report to his parole officer when directed.  The Parole Board also acknowledged that during the final hearing, Hodge testified to concerns about his supervising officer and what he claimed were inaccuracies in her testimony.

Hodge filed a petition for declaration of rights in Kenton Circuit Court. The Circuit Court granted the Parole Board's motion to dismiss the petition, holding that the two-hearing process, followed by review of the ALJ findings by the Parole Board, complied with the dictates of *Morrissey v. Brewer,* 408 U.S. 471 (1972), a major Supreme Court decision that delineates the minimum due process requirements for the parole revocation process.  The Court of Appeals

---

[1] Hodge notes that it is unclear from the record whether the Parole Board ever saw the treatment plan Hodge submitted, and asserts that, in making its final determination, the Board either completely ignored or was unaware of the fact that Hodge needed mental health treatment and had already secured placement for that treatment prior to the conclusion of the revocation proceedings.

4

affirmed, determining that adequate due process was provided and that the final revocation hearing did not need to be before the Parole Board itself. The Court of Appeals further found the Parole Board did not abuse its discretion in finding that revocation was appropriate. Hodge filed a motion for discretionary review in this Court.

**Timothy Shane**

Timothy Shane was convicted of first-degree rape, second-degree robbery, and first-degree unlawful imprisonment. Shane was released on parole subject to a variety of conditions, including a prohibition on the use of alcohol. While released on parole, Shane was pulled over for a seatbelt violation and admitted to consuming alcohol. Police found an open container of alcohol in his center console and his breathalyzer result was a 0.16, twice the legal limit. He was charged with driving under the influence and with violating his parole.

Shane waived the probable cause hearing. During the final evidentiary hearing conducted by an ALJ rather than the Board itself, Shane's parole officer testified as to the conditions of his parole and the officer who conducted the traffic stop testified as to the circumstances of Shane's arrest, including his admission to the consumption of alcohol. Shane, represented by counsel, presented mitigating information, but ultimately the ALJ determined, by a preponderance of the evidence, that Shane violated the conditions of his parole. The Parole Board adopted the ALJ's findings and revoked Shane's parole.

Shane submitted a request for reconsideration and argued that the Parole Board violated due process by failing to conduct a hearing and instead relying exclusively on the ALJ's recommendations, and that this error was exacerbated by his inability to present mitigating evidence directly to the Board. The Board granted partial reconsideration, rejecting Shane's due process claims but finding there were "numerous" letters submitted in mitigation that had not been reviewed. The matter was submitted to the full Parole Board for consideration. Ultimately, the Parole Board sent Shane a letter stating it had reviewed additional documents but voted to uphold its revocation decision.

Shane filed a declaratory judgment action in Franklin Circuit Court arguing the Parole Board's procedure was improper because his case was never heard "by the Board" as required by *Jones v. Bailey,* 576 S.W.3d 128 (Ky. 2019), a decision which assessed the constitutional validity of the Parole Board's revocation procedures. Additionally, he argued the revocation order did not contain the requisite findings pursuant to KRS 439.3106, and there was not sufficient evidence to support revocation. The circuit court denied relief, concluding that the Parole Board's procedures met the standards set forth in *Jones* and that the Parole Board was permitted to delegate the final evidentiary hearing process to an ALJ.

On appeal, the Court of Appeals reversed the trial court. The appellate court first concluded that although Shane's appeal was moot because he was released on parole while his appeal was pending, the public interest exception

6

applied and thus the court retained jurisdiction. The Court of Appeals agreed that *Jones* and KRS Chapter 439 mandate that the Parole Board conduct final revocation hearings. Because of the mootness of Shane's claims, given that he was on parole at the time the appellate court rendered its decision, it declined to address Shane's other arguments, namely that the ALJ's and Parole Board's orders did not make the requisite findings and that there was insufficient evidence supporting revocation.

We granted discretionary review in both cases to determine whether the Parole Board's procedure allowing an ALJ to conduct a final evidentiary revocation hearing satisfies both constitutional and statutory requirements.

## ANALYSIS

### I. The Kentucky Parole Revocation Process.

The parole process is an integral part of our penological system. Not only does it serve to help individuals constructively reintegrate into society, but it also serves to alleviate the costs of keeping an individual in prison. To accomplish the purposes of parole, released individuals are subject to various conditions that generally restrict their activities beyond the ordinary restrictions imposed on citizens. When a person violates those conditions, a parole officer can take steps to have parole revoked when necessary, thus triggering the parole revocation procedures generated by the Parole Board.

When parole is allegedly violated, the Parole Board issues a parole violation warrant and a notice to the parolee regarding the probable cause hearing. The notice explains that the parole revocation process contains

7

multiple steps, including a hearing before an ALJ to determine probable cause, a final revocation hearing where a parolee is given an opportunity to be heard and show that they did not violate the conditions of parole, and a final decision by the Parole Board based on the findings of fact as determined at the final revocation hearing or the Parole Board's own review of the record.

The notice for the probable cause hearing informs the individual that they have an opportunity to present witnesses and documents, and to question witnesses that testify against them, unless disallowed by the hearing authority. This preliminary hearing is conducted by an ALJ. Based on the evidence produced at the hearing or any evidence for which judicial notice is taken, the ALJ must determine whether probable cause exists to believe that the offender has committed any or all of the violations alleged in the notice of probable cause hearing. If probable cause is found, the matter is referred to the Board for a final revocation hearing.

A parolee then receives notice of the final revocation hearing, which includes much of the information contained in the probable cause hearing notice. However, it informs the individual that the standard of proof is a preponderance of the evidence. According to the Board's regulations, an offender can present evidence in defense and mitigation of the charges.

While the notice regarding the final revocation hearing contemplates the possibility that the hearing may occur before members of the Parole Board, Hodge asserts that these hearings are held exclusively before ALJs. Additionally, 501 Kentucky Administrative Regulations (KAR) 1:040 defines

8

"factfinder" as "the person or entity that determines the facts at a hearing and includes the administrative law judge or the Parole Board depending on which conducts the hearing and issues findings of fact." 501 KAR 1:040 Section 1(2).

Generally, the first time the Board is involved in the parole revocation process is to make the final determination as to whether parole should be revoked. The Board can review the findings of the ALJ in making its determination or conduct its own review of the record.

## II. Although portions of Shane's case are moot, the public interest exception applies.

Shane argues that the Parole Board is constitutionally and statutorily prohibited from delegating final evidentiary hearings to ALJs, and that the Board failed to make required findings in revoking his parole. While his appeal was pending, in April 2022 the Board recommended Shane for parole. He was subsequently discharged from custody and placed back on supervision in May 2022. As a result, the Parole Board moved the Court of Appeals to dismiss the appeal as moot. We agree that Shane's argument regarding the specific findings made by the Parole Board is now moot, since he was discharged from custody, but find that an exception to mootness allows his improper delegation arguments to proceed.

"[A] 'moot case' is one which seeks to get a judgment . . . upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a *then* existing controversy." *Morgan v. Getter,* 441 S.W.3d 94, 98-99 (Ky. 2014) (citation omitted). Generally, "where, pending an appeal, an event occurs which makes a determination of the question unnecessary or

9

which would render the judgment that might be pronounced ineffectual, the appeal should be dismissed." *Id.* at 99 (citation omitted).

One commonly recognized exception, the public interest exception, "allows a court to consider an otherwise moot case when (1) the question presented is of public nature; (2) there is a need for an authoritative determination for future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." *Id.* at 102 (citation omitted). As to the first element, the question of whether due process is guaranteed by the current revocation procedures utilized by the Parole Board is undoubtedly a question of public nature. In *Jones,* this Court reasoned that "procedural due process pertaining to the revocation of condition freedom" was a matter of public interest. 576 S.W.3d at 135.

After the *Jones* decision, the Parole Board revised its revocation procedures to allow the Parole Board to delegate final revocation hearings to ALJs. This indicates that "there is a need for an authoritative determination for the future guidance of public officers" on these issues.[2] *Morgan,* 441 S.W.3d at 102 (citation omitted). In addition, the separate Court of Appeals panels that rendered decisions in Shane and Hodge reached different conclusions, further necessitating a decision by this Court on these issues.

Finally, given the volume of cases the Parole Board must hear, these questions will undoubtedly arise again in the future. In 2022, the Parole Board

---

[2] In fact, during oral argument Hodge's counsel stated that he was aware of eight other cases currently being held in abeyance pending the resolution of these appeals.

considered 2,904 revocation cases.[3]  As the *Jones* Court noted, "the employment of current administrative procedures is a recurrent event in the revocation process."  576 S.W.3d at 135.  Therefore, we are satisfied that the public interest exception to mootness applies in Shane's case and permits us to determine the legality of the Parole Board's revocation procedures.

### III. The use of ALJs to conduct final revocation hearings does not violate due process.

Hodge and Shane argue that they are entitled to a final evidentiary hearing before the Parole Board prior to the revocation of parole.  We must determine whether the Parole Board's delegation of the final revocation hearing to an ALJ violates a parolee's constitutional due process rights.  "[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations."  *Morrissey,* 408 U.S. at 480.

In *Morrissey,* the Supreme Court determined the minimum process required before a state may revoke the conditional liberty of a parolee.  *Id.* at 489.  The Court examined whether the Due Process Clause of the Fourteenth Amendment requires states to afford individuals an opportunity to be heard before revoking parole.  *Id.* at 472.  When two parolees violated their release conditions, the Iowa Parole Board revoked their parole, having only read reports from their parole officers.  *Id.* at 472-73.  The Court explained there are

---

[3] Ky. Dep't of Corr., Ky. Parole Bd. 2022 Calendar Year Report (2023), https://justice.ky.gov/BoardsCommissions/pb/Documents/Annual%20Reports/2022%20CY%20Report.pdf.

11

two important stages in a typical parole revocation process. First, an informal preliminary hearing before an independent officer to determine whether there is probable cause for the parole revocation. *Id.* at 485. A parolee should be given notice of the hearing which includes the alleged parole violations and the purpose of the hearing. *Id.* at 486-87. During this hearing, the parolee should be permitted to speak on his own behalf and present evidence. *Id.* at 487. The hearing officer must determine whether there is probable cause to hold the parolee pending a final revocation decision. *Id.*

The second stage is the revocation hearing that leads to a final determination of whether parole should be revoked. *Id.* at 487-88. This hearing must give a parolee an opportunity to show that he did not violate the conditions of parole and to offer mitigating circumstances. *Id.* at 488. The final revocation hearing "must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Id.*

As noted by the Court, states are tasked with creating the procedure for the parole revocation process, but *Morrissey* dictates the minimum requirements of due process during a final revocation hearing. *Id.* at 488-89. These requirements include:

> (a) written notice of the claimed violations of parole;
> (b) disclosure to the parolee of evidence against him;
> (c) opportunity to be heard in person and to present witnesses and documentary evidence;
> (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

12

(e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and
(f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489. The Court also emphasized that these basic requirements "should not impose a great burden on any State's parole system." *Id.* at 490. One year later, in *Gagnon v. Scarpelli,* the Court adopted the criteria established in *Morrissey* and made it applicable to probation revocation. 411 U.S. 778 (1973). The Court further held that states are not constitutionally obligated to provide counsel but emphasized the importance of legal representation. *Id.* at 790.

The Kentucky Parole Board's revocation procedures underwent changes after this Court rendered its decision in *Jones,* in which this Court addressed a lack of any final revocation hearing and whether such process was supported by Kentucky law. 576 S.W.3d 128. After failing to complete a condition of his post-incarceration supervision,[4] Bailey received notice of a preliminary revocation hearing. *Id.* at 133. While Bailey received a preliminary hearing, conducted by an ALJ, at which he was represented by counsel and allowed to present witnesses and evidence, he did not receive notice of a final revocation hearing. *Id.* at 134. As a result, he did not have counsel to represent him nor was he able to present witnesses or further testimony regarding the alleged violations. *Id.* Rather, the Board revoked Bailey's parole solely based on the record created at the preliminary hearing. *Id.*

---

[4] Post-incarceration supervision is treated like parole. *Jones,* 576 S.W.3d at 133.

13

Bailey filed a petition for writ of mandamus in circuit court asserting that his due process rights were violated by the Board's failure to conduct a constitutionally sufficient final hearing prior to revocation of his supervision. *Id.* On discretionary review, this Court concluded that Bailey's procedural due process rights were violated at the final revocation hearing. *Id.* at 135. The Board conceded that the "final hearing" is not an actual "hearing," but was more appropriately termed a "final adjudication" since the Board only reviews the record to determine that the ALJ's probable cause finding is correct. *Id.* at 143. Since Bailey "was not afforded an evidentiary final revocation hearing where he could present evidence and confront witnesses," he was denied due process. *Id.* at 144.

Further, the Court held that the Board's sole reliance on the administrative record created at the probable cause hearing did not satisfy due process requirements. *Id.* at 133. The Court explained that an evidentiary final hearing is a minimal due process requirement, as dictated by *Morrissey,* that is not satisfied by the decisionmaker simply reviewing the preliminary hearing record—it must be an actual hearing. *Id.* Supervised individuals have a constitutional right to procedure beyond a single probable cause hearing and must be afforded the opportunity to present evidence and be heard. *Id.* at 144.

Hodge and Shane argue that *Jones* dictates that the Board itself, not ALJs, must conduct final evidentiary hearings prior to parole revocation. In *Jones,* Bailey was not provided notice of the time and place of the final revocation hearing, did not have counsel to represent him, and was not able to

14

present witnesses or further develop testimony regarding the alleged violations, resulting in a constitutionally deficient final hearing prior to the revocation of his release. *Id.* at 136. The Court explained:

> the Board is the body charged with determining the ultimate findings of fact. Because the conclusion that a supervision violation has occurred is one where "a wide variety of information may be deemed relevant, and issues of witness credibility and veracity are often critical to the decision making process," reviewing the administrative record is only minimally reliable and a "wholly unsatisfactory basis for [a revocation] decision." *Mathews v. Eldridge,* 424 U.S. 319, 343-44, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Bailey had a constitutional right to a hearing pursuant to procedures that enabled him to make his case to the Board, who would then have full awareness of all the evidence presented and would be able to decide whether there were any mitigating factors in his favor.

*Id.* at 144. *Jones* is distinguishable because Bailey effectively was not afforded a final revocation hearing, given that he was unable to present witnesses or testimony regarding the violations. A single probable cause hearing is insufficient to create a record upon which a revocation can be based. Bailey was unable to further develop the evidentiary record.

However, neither *Morrissey* nor *Jones* explicitly state that an ALJ cannot conduct the final hearing. In fact, *Morrissey* explicitly recognizes that it is a state's responsibility to devise parole revocation procedures. 408 U.S. at 488. *Morrissey* explains that due process requires "a 'neutral and detached' hearing body." *Id.* at 489. While the Court mentioned that the "traditional parole board" would satisfy this requirement, it did not require that the hearing be conducted by the Board itself for purposes of a final revocation hearing. Indeed, to the contrary, in summarizing appropriate final revocation hearing

15

procedures, the *Morrissey* Court referred to such proceedings being conducted by a "hearing officer," plainly separate from the parole agency itself. *Id.* (noting that confrontation must be allowed "unless the **hearing officer** specifically finds good cause for not allowing confrontation.") (emphasis added).

The Court further noted that the due process requirements it mandated "should not impose a great burden on any State's parole system." *Id.* at 490. Using ALJs as hearing officers is both practical and pragmatic. The Parole Board is statutorily constrained to nine members. According to the Parole Board, if it were tasked with personally conducting parole revocation hearings it would add thousands of additional hearings to the Board's already packed docket. The Board is unable to add additional members to address that kind of increased workload. Further, in its briefing the Board explained that Parole Board members are currently tasked with their regular weekly meeting, victim hearings, face-to-face hearings for parole-eligible inmates, file reviews on inmates for whom a face-to-face hearing is not required, votes on cases brought before the full Board, reconsideration requests, parole revocation warrants, specialty early release requests, and revocations.

Here, Hodge and Shane were given the opportunity to make their case to the ALJ during the final revocation hearing. In parole revocation proceedings, ALJs serve as agents of the Board specifically charged to make findings of fact and develop the evidentiary record. ALJs have no decision-making authority whatsoever, but rather they serve as neutral and detached hearing officers. By making their cases to the ALJs, they were effectively able to make their case to

16

the Board, who then had "full awareness of all the evidence presented and [was] able to decide whether there were any mitigating factors in [their] favor." *Jones,* 576 S.W.3d at 144.

In issuing written findings of fact, an ALJ does not make a recommendation as to whether revocation is appropriate. Rather, the ALJ is tasked with determining whether an offender committed the alleged violations by a preponderance of the evidence. The Board then makes a final written decision regarding whether parole should be revoked. 501 KAR 1:040(13)(2)(d) provides:

> [t]he board shall issue a decision in writing to determine whether parole is revoked or not:
> 1. Based on the findings of fact determined at the final revocation hearing; or
> 2. Based on its own review of the facts and reasoning; and
> 3. The Board's decision shall include an analysis of whether the offender's violation constitutes a significant risk to the offender's victim or the community at large and whether the offender can be appropriately managed in the community.

Notably, the Board is permitted to base its revocation decision on the findings of fact determined at the final revocation hearing or based on its own review. *Id.*

Currently, parolees receive two full hearings before an independent ALJ prior to a third review and final decision by the Parole Board. But importantly, the Board retains the ultimate decision-making power regarding whether to revoke parole. In sum, the Board's use of ALJs to conduct final revocation hearings is reasonable, practical, and, most importantly, does not violate the guarantees of due process or the dictates set forth by *Morrissey* and *Jones.*

17

Despite the overarching validity of the delegation process, we nonetheless cannot uphold the procedures utilized in these cases in their entirety because Hodge and Shane were not given the opportunity to file, with the Board, exceptions to the ALJ's findings for consideration. While we acknowledge that Parole Board hearings are specifically exempt from KRS Chapter 13B, *see* KRS 13B.020(3)(c)(2)(a), 13B-like procedures that allow the filing of exceptions would completely satisfy the mandates of due process.

KRS Chapter 13B provides respondents in administrative hearings with due process safeguards that are both necessary and legally adequate for various matters, ranging as far as professional licensure to employment. KRS 13B.110(4) allows parties disagreeing with a hearing officer's recommendation to file written exceptions, which would direct the Parole Board's attention to any perceived inadequacies in the ALJ's findings. *Ky. Bd. of Med. Licensure v. Strauss*, 558 S.W.3d 443, 456 (Ky. 2018). As we noted in *Rapier v. Philpot,* 130 S.W.3d 560, 563 (Ky. 2004), the filing of exceptions provides the means for "preserving and identifying issues for review" by the agency head. If a provision for filing exceptions were made applicable to the Parole Board revocation process, it would further ensure that due process rights of parolees are maintained.

In utilizing the present procedures, it appears in some instances the Board may not review anything other than the ALJ's findings of fact, which are drafted solely by the ALJ while serving as factfinder. As explicitly required by 501 KAR 1:040(13)(2)(d), the Board must make the ultimate determination as

to whether an individual has violated parole and retains the ability to render the final decision as to revocation. Along with this express duty, the procedures utilized by the Parole Board must ensure that the Board apprises itself of the full facts and issues in the matter before rendering its final decision, which can undoubtedly be accomplished through a parolee's ability to file exceptions to the Parole Board.

## IV. Statutes do not prohibit the Parole Board from delegating parole revocation hearings to ALJs.

In rendering the Shane decision, the Court of Appeals held that Kentucky statutory law requires the Board to conduct the final revocation hearing.[5] Generally, KRS Chapter 439 provides authority for the Parole Board to conduct hearings when a person is charged with parole and post-incarceration supervision violations. These statutes also grant the Parole Board authority to establish regulations regarding the conduct of revocation hearings. Specifically, KRS 439.340(3)(b) directs the Parole Board to

> adopt administrative regulations with respect to the eligibility of prisoners for parole, the conduct of parole and parole revocation hearings and all other matters that come before it, or conditions to be imposed upon parolees. . . .

Thus, by its plain language, KRS 439.340(3)(b) requires the Parole Board to adopt regulations to control the parole revocation hearing process.

---

[5] While Hodge did not raise statutory arguments in his initial brief to this Court, the Parole Board, in response, argued the Parole Board procedures were compliant with Kentucky statutes. The Court of Appeals did not address statutory arguments in its decision in Hodge. Nevertheless, the same analysis and conclusions we adopt here equally apply to Hodge's case.

19

The Supreme Court of the United States has long recognized that the rule-making power of an administrative agency "may itself be an adequate source of authority to delegate a particular function, unless by express provision of the Act or by implication it has been withheld." *Fleming v. Mohawk Wrecking & Lumber Co.,* 331 U.S. 111, 121 (1947). Kentucky law similarly recognizes the existence of implied, as opposed to inherent, powers relative to administrative agencies. *See Humana of Ky., Inc., v. NKC Hosps., Inc.,* 751 S.W.2d 369, 372-73 (Ky. 1988) ("[A]dministrative agencies 'possess the powers reasonably necessary and fairly appropriate to make effective the express powers granted to or duties imposed on them.").

In *Ashland-Boyd City-County Health Department v. Riggs,* 252 S.W.2d 922, 923 (Ky. 1952), this Court held that

> [p]owers of administrative boards and agencies are those conferred expressly or by necessary or fair implication. It is a general principle of law that where the end is required, the appropriate means are implied.

The legislature has explicitly directed the Parole Board to develop regulations to control the conduct of parole revocation hearings, and the power to delegate the hearing functions is appropriately implied from the ability to control those proceedings. Further,

> express statutory authority may support but is not necessarily required for an administrative agency or officer to subdelegate its authority, and the omission by the legislature of any specific grant of, or grounds for, the power to delegate is not to be construed as a denial of that power. If there is a reasonable basis to imply the power to delegate the authority of an administrative agency, such an implication may be made, and the power to delegate may be implied.

20

73 C.J.S. *Public Administrative Law & Procedure* § 160 (2025) (footnotes omitted).  As such, the delegation of non-binding factfinding duties to a hearing officer is impliedly within the scope of the Parole Board's authority.

The Parole Board promulgated 501 KAR 1:040 § 1(2) to specifically include an administrative law judge within the definition of "fact finder."  501 KAR 1:040 § 13(2)(a)-(c) contemplates the conduct of final hearings by an ALJ as the factfinder.  However, 501 KAR 1:040 § 13(2)(d) explicitly reserves the final decision-making authority to the Parole Board.  Because the Parole Board has retained the final decision-making authority on revocation, the power to delegate advisory factfinding duties to an ALJ may be fairly implied from its express power to "adopt administrative regulations with respect to . . . the conduct of parole and parole revocation hearings[.]"  KRS 439.340(3)(b).  By delegating final hearings to an ALJ, while reserving its final decision-making authority, the Parole Board has satisfied its statutory duty to "conduct" parole revocation hearings.

The Court of Appeals relied on KRS 439.440, which provides that "[a]ny prisoner returned to state custody for violation of his or her release shall be heard by the board within sixty (60) days on the propriety of his or her rerelease."  While the statute does reference the Board, the primary purpose of this statute is to dictate the time in which a prisoner must be heard regarding the alleged violations of release.  As with all statutes, KRS 439.440 "must be read as a whole and in context with other parts of the law."  *Lewis v. Jackson Energy Co-op. Corp.,* 189 S.W.3d 87, 92 (Ky. 2005).  A basic interpretive canon

21

of statutory construction is that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States,* 556 U.S. 303, 314 (2009) (citation omitted).

The appellate court also pointed to KRS 439.330(1)(e), which states that one of the Board's duties is to "[i]ssue warrants for persons charged with violations of parole and postincarceration supervision and conduct hearings on such charges . . . ." But the Court of Appeals omitted the last clause of the statute, which adds that the Board shall "conduct hearings on such charges, subject to the provisions of KRS 439.341, 532.043, and 532.400 . . . ." As explained above, KRS 439.341 permits hearing officers to perform any other duties assigned by the Board, including the duties set forth in KRS 439.330(1)(e). As a result, delegation of final revocation hearings to ALJs is consistent with KRS 439.330(1)(e).

Finally, the Court of Appeals cited KRS 439.320(5), which states

[p]arole and final parole revocation hearings may be done by panels of the board, subject to the following requirements:
(a) A panel shall consist of not less than three (3) and not more than six (6) members; and
(b) All members of the panel shall agree on a decision or the matter shall be referred to the full board.

The Court of Appeals reasoned that, implicit in this statute is that the Board, not a hearing officer, conducts final revocation hearings. However, 501 KAR 1:040(1)(2) defines factfinder as an ALJ or the Parole Board, depending on which conducts the hearing and issues the findings of fact. The statute states that final revocation hearings **may** be done by panels of the Board. So the

22

statute, like the regulation, leaves open the possibility that the final revocation hearing may be conducted by the Board, or delegated to an ALJ. KRS 439.320 simply describes how the Board may divide its work, allowing for decisions to be made from panels of members.

In sum, the Parole Board is well within the authority granted by KRS 439.340(3)(b) to delegate fact finding duties to an ALJ through its promulgation of administrative regulations that govern the conduct of parole and parole revocation hearings. However, because there is no procedure for the parolee to file exceptions regarding the ALJ's findings directly to the Parole Board, we must ultimately reverse the Court of Appeals in Hodge's case and affirm the Court of Appeals in Shane's case, but not because of any lack of statutory authority of the Board.

## CONCLUSION

Without an avenue for parolees to present evidence and arguments directly to the Parole Board via exceptions, the present revocation procedures do not satisfy due process, to which parolees are constitutionally entitled. For the foregoing reasons, we reverse the Court of Appeals and the Kenton Circuit Court's order dismissing Hodge's declaration of rights actions. In Shane's case, we affirm the Court of Appeals and reverse the Franklin Circuit Court's dismissal of Shane's declaration of rights action.

All sitting. Lambert, C.J.; and Thompson, J., concur. Bisig, J., also concurs in part and dissents in part by separate opinion which Nickell, J.,

23

joins.  Goodwine, J., dissents by separate opinion which Conley and Keller, JJ., join.  Keller, J., dissents by separate opinion.

BISIG, J., CONCURRING IN PART, DISSENTING IN PART:  I concur with the majority's determination that, generally, the Parole Board is entirely within its authority to delegate fact-finding functions to ALJs.  However, while allowing parolees to file exceptions to ALJs reports may provide an additional layer of review, I would find the defendants' due process rights were protected by the current process.

Further, there was sufficient evidence to revoke Hodge's parole pursuant to KRS 439.3106, which required the Board to determine that Hodge could not be appropriately managed in the community.  In its revocation order, the Board specifically noted that, given that Hodge had been on parole twice before, he clearly understood that he was required to make himself available for supervision and report to his parole officer.  Because there was evidence that Hodge refused to provide his location to his parole officer and failed to appear when she directed him to do so, the requirements of KRS 439.3106 were met.  Therefore, I would affirm the Court of Appeals and the Kenton Circuit Court's order dismissing Hodge's declaration of rights action, and reverse the Court of Appeals and affirm the Franklin Circuit Court's dismissal of Shane's action for declaratory relief.

Nickell, J., joins.

GOODWINE, J., DISSENTING:  I agree with the majority's analysis of Kentucky's parole revocation process and that the public interest exception to

24

the mootness doctrine applies to Shane's case. However, I disagree with the majority's view on the legality of the Board's revocation procedures. Delegating final parole revocation hearings to ALJs violates due process and is prohibited by statute. Therefore, respectfully, I dissent.

## I. The use of ALJs to conduct final revocation hearings violates due process.

First, the majority holds that using ALJs to conduct final revocation hearings does not violate due process. I disagree. In *Morrissey v. Brewer*, the Supreme Court of the United States determined the minimum due process required before a state may revoke the conditional liberty of a parolee. 408 U.S. 471 (1972). The Court examined whether the Due Process Clause of the Fourteenth Amendment requires states to afford an individual an opportunity to be heard before revoking parole. *Id.* at 472.

The Court explained there are "two important stages in a typical parole revocation process." *Id.* at 485. The first stage is a preliminary hearing before an independent officer to determine whether there is probable cause to revoke parole. *Id.* at 485. During the initial hearing, "the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation." *Id.* at 486-87. The parolee should be permitted to "speak on his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer." *Id.* at 487. The hearing officer must

25

determine "whether there is probable cause to hold the parolee for the final decision of the parole board on revocation." *Id.*

The second stage of the parole revocation process is the final revocation hearing, which results in a decision on whether to revoke parole. The final revocation hearing must meet the following requirements:

> This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation. The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody.

*Id.* at 488.

> In sum, due process under *Morrissey* requires:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489.

The Parole Board's revocation procedures were revised after this Court issued its decision in *Jones v. Bailey*, which addressed the absence of a final revocation hearing, contrary to *Morrissey*, and whether such a process was supported by Kentucky law. 576 S.W.3d 128 (Ky. 2019). In *Jones*, the Board revoked Bailey's parole solely based on the record from the preliminary hearing. *Id.* at 143.

26

On discretionary review, this Court concluded "that Bailey's procedural due process rights . . . were violated at the final revocation hearing." *Id.* at 135. The Board conceded that "the final hearing is not an actual 'hearing' but may be more appropriately termed a 'final adjudication' since the Board only reviews the record to determine that the ALJ's probable cause finding is correct." *Id.* at 143 (footnote omitted). Since "Bailey was not afforded an evidentiary final revocation hearing where he could present evidence and confront witnesses, we must conclude he was denied due process." *Id.* at 144 (footnote omitted).

Further, the Court held that the Board's sole reliance on the administrative record created at the preliminary probable cause hearing did not satisfy due process requirements. *Id.* The Court explained that an evidentiary final hearing is a minimum due process requirement, as dictated by *Morrissey*, that is not satisfied by the decisionmaker simply reviewing the preliminary hearing record—it must be an actual hearing. *Id.* at 143. Supervised individuals have "a constitutional right to a hearing pursuant to procedures that enabled him to make his case to the Board, who would then have full awareness of all the evidence presented and would be able to decide whether there were any mitigating factors in his favor." *Id.* at 144.

We agree that *Morrissey* does not require the Board to be the "hearing body"—that is a decision left to state legislatures. However, the requirement that the factfinder make written findings regarding the evidence relied on and the reasons for revoking parole is not met by the Board's current procedure, which allows ALJs to conduct the final revocation hearing. Although not

27

explicitly stated, *Morrissey* and *Jones* indicate that the "hearing body" serves as both factfinder and decision-maker.

Against that legal backdrop, we examine the specific facts of *Hodge* and *Shane.* In *Hodge*, after a preliminary hearing, the ALJ found there was probable cause to believe Hodge violated his parole by absconding and failing to report a change of address. A final revocation hearing was then held before a different ALJ, who determined that the evidence showed, by a preponderance, that Hodge had violated his parole only by absconding. Without hearing new evidence, the Board upheld the ALJ's finding and concluded that, based on Hodge's failure to inform his parole officer of his whereabouts, he had indeed absconded. The Board decided Hodge could not be effectively supervised and posed a significant risk to the community, so it deferred reconsideration of his parole for twenty-four months.

In his petition for review to the circuit court, Hodge alleged that the procedures employed by the Board in determining whether his parole should be revoked did not meet minimal due process standards. Hodge complained that because the full Board relied on the record developed by the ALJs at the two hearings and did not itself receive evidence or arguments concerning the allegations, the procedure failed to provide him adequate due process. However, Hodge didn't offer any evidence that the Board failed to consider. The circuit court held that the two-hearing process, conducted by ALJs and followed by a review of the ALJ's decisions by the full Board, complied with *Morrissey.* The Court of Appeals agreed and held that the minimum due

28

process requirements of *Morrissey* and *Jones* were met, noting that neither requires a final hearing before the Board. For reasons set forth below, I disagree.

Shane was charged with a parole violation for using alcohol while on parole for a thirty-year sentence, and he waived the probable cause hearing. An ALJ conducted a final revocation hearing. Shane did not testify at the hearing, but he submitted letters as mitigating evidence. The ALJ made findings of fact and legal conclusions that Shane had violated his parole conditions by using alcohol. The ALJ's report did not mention the mitigating evidence Shane had submitted. The Board adopted the ALJ's findings without reviewing additional evidence and revoked Shane's parole. Shane claims the Board only reviewed the ALJ's report and not the hearing video because they were unaware of the letters Shane submitted until he pointed them out during a reconsideration request, which was unsuccessful.

Shane filed a petition for review in the circuit court, arguing it was improper for the ALJ to conduct the final revocation hearing. The circuit court denied Shane's petition and dismissed the action. Shane appealed to the Court of Appeals and argued that the Board's final revocation hearing procedure in his case violated due process and Kentucky's statutory law. The court agreed. While Shane's appeal was pending, he was released from parole.

The Court of Appeals held that *Jones* and KRS 439.440 required the Board to conduct the final hearing, acknowledging that a different panel had recently reached the opposite holding in *Hodge*. The court opined that

> *Jones* held it was constitutionally insufficient for the Board to base its revocation decision on a simple review of the administrative record. We read *Jones* as requiring the Board to conduct the final revocation hearing so it may make an informed decision as to revocation, having heard all the evidence.

*Shane v. Ky. Parole Bd.*, No. 2022-CA-0135-MR, 2023 WL 4535569, at *3 (Ky. App. July 14, 2023). I agree.

Hodge and Shane argue that *Jones* dictates that the Board itself, not ALJs, must conduct final evidentiary hearings prior to parole revocation. The majority attempts to distinguish *Jones,* arguing that Bailey was not afforded a final revocation hearing to further develop the evidentiary record because he was unable to present witnesses or testimony regarding the violations, and that a single probable cause hearing is insufficient to create a record upon which a revocation can be based.

Although the facts in *Hodge* and *Shane* are distinguishable from each other and the procedure in *Jones, Shane* is a prime example of why one hearing body needs to serve as both factfinder and final decision-maker for revocation. The Board must have "full awareness" of all the evidence presented at the final hearing to make a fully informed decision to satisfy minimum due process requirements. *Jones*, 576 S.W.3d at 144.

The Board clearly lacked this "full awareness" because the ALJ provided a "bare bones" report to the Board. It did not include any arguments made by Shane's counsel, any of the favorable testimony from the parole officer, or any discussion of the factual issues raised during the parole officer's cross-examination, or letters Shane submitted from loved ones and two employers.

30

Shane argues that the Board must have relied solely on the ALJ's report rather than reviewing the hearing video because it was unaware of the letters until Shane pointed them out in his reconsideration request. This is far from the "full awareness" *Jones* requires. *Id.*

Though the Board argues that its current procedures comply with this Court's mandate in *Jones,* the Board continues to impermissibly rely on the administrative record rather than hearing testimony when making final revocation decisions. Though Hodge does not allege the Board overlooked mitigating evidence in his case, the Board's unconstitutional delegation of the final hearing is statutorily prohibited and could result in the Board overlooking mitigating evidence in any case because it lacks "full awareness." Thus, I would hold that the Board's unconstitutional delegation of the final revocation hearing constitutes a violation of the minimum due process requirements in *Morrissey* and *Jones.*

II.    **KRS 439.341 does not authorize the Board to delegate final parole revocation hearings to an ALJ.**

I disagree with the majority's holding that KRS 439.341 authorizes the Board to delegate final parole revocation hearings to an ALJ. Though I acknowledge that "we must look first to the plain language of a statute," our inquiry does not end there because KRS 439.341 concerns preliminary matters, and other sections of KRS Chapter 439 more specifically address final revocation hearings. *Univ. of Louisville v. Rothstein,* 532 S.W.3d 644, 648 (Ky. 2017) (quoting *Revenue Cabinet v. O'Daniel,* 153 S.W.3d 815, 819 (Ky. 2005)).

31

KRS 439.341 is titled "Probable cause revocation hearings of probation, parole, and [post-incarceration] supervision violators" and provides:

> Probable cause revocation hearings of probation, parole, and [post-incarceration] supervision violators shall be conducted by hearing officers. These hearing officers shall be attorneys, appointed by the board and admitted to practice in Kentucky, who shall perform the aforementioned duties and any others assigned by the board.

This statute concerns initial probable cause hearings. To interpret "any other duties" as broadly as the majority does would allow the Board to assign all duties to ALJs. It is unclear what the legislature intended "any other duties" to apply to, but, contextually, said duties pertain to initial probable cause hearings.

A review of the statutory scheme and the Board's administrative regulations provides an antithetical viewpoint. KRS 439.320(5) allows the board to use three-member panels to conduct final hearings:

> Parole and final parole revocation hearings may be done by panels of the board, subject to the following requirements:
>
> (a) A panel shall consist of not less than three (3) and not more than six (6) members; and
>
> (b) All members of the panel shall agree on a decision or the matter shall be referred to the full board.

The majority's interpretation of this section leaves open the possibility that the final revocation may be conducted by the Board or delegated to an ALJ. I disagree, interpreting this section as allowing the Board to choose to conduct hearings with the full Board or use panels of its members. Additionally, KRS 439.440 provides: "Any prisoner returned to state custody for violation of his or her release **shall be heard by the board** within sixty (60)

32

days on the propriety of his or her rerelease." (emphasis added). Thus, I am convinced that the Board is statutorily mandated to conduct final revocation hearings.

### III. The Board's administrative regulations belie its position that it may delegate final revocation hearings to ALJs.

Two sections of 501 KAR 1:040 require ALJs to refer matters to the Board for final hearings:

Section 6. Probable Cause Determination.

> (5) If probable cause is found by the administrative law judge, the matter **shall be referred to the board for** issuance of a parole violation warrant, if one has not been issued, and **a final revocation hearing**.

Section 7. Referral for Parole Violation Warrant.

> (1) If probable cause is determined to exist, the case shall be **referred to the board for** issuance of a parole violation warrant and **a final revocation hearing**.

(emphasis added).

Although it is unclear which duties the phrase "any other duties" in KRS 439.341 refers to, the clear language of the statutes and regulations governing final revocation hearings mandates that the Board conduct these hearings. While the due process standards in *Morrissey* could be met if an ALJ handled both fact-finding and decision-making, KRS Chapter 439 does not permit the delegation of decision-making authority. Therefore, both Hodge's and Shane's due process rights were violated when the Board delegated their final revocation hearings to an ALJ.

33

Though I reach this conclusion, permitting parolees to file exceptions[6] to an ALJ's report would ensure the Board is aware of any mitigation evidence, would give the Board "full awareness" of the evidence to make its final revocation decision, and would likely satisfy the due process requirements in *Morrissey* and *Jones*.

## IV. The record is devoid of any evidence that the Board conducting final revocation hearings would overburden the parole system.

Finally, I consider the majority's view that requiring the Board to conduct parole revocation hearings would add thousands of extra hearings to its already busy schedule, overburdening the parole system. Shane argues that the Board's claims about its workload and the risk of overloading the system by holding its own final hearings are not preserved. The Board did not address Shane's preservation argument in its reply brief, instead responding that its workload argument is relevant to prevent an unreasonable outcome. Despite our precedent on preservation, the majority opinion neither addresses Shane's preservation argument nor explains why the issue should receive our attention.

Because the record lacks evidence on the number of final revocation hearings held each year, it is impossible to fully understand the Board's

---

[6] KRS 13B.120 (1)-(2) provides in pertinent part that, "once a hearing officer has issued a recommended order, the agency heads must 'consider the record, including the recommended order and any exceptions duly filed to a recommended order and determine whether to accept the officer's recommendation . . . (emphasis added). Parole Board hearings are currently exempt from the mandates of KRS 13B. *See* KRS 13B.020(3)(c)(2)(a). Thus, we suggest "13B-like" procedures. The General Assembly should amend the statute accordingly and permit the delegation of the final revocation hearing to ALJs, and then the Board could amend its regulations to adopt KRS 13B-like procedures to include a right for a parolee to request exceptions.

workload without definitive numbers. The Board states, without supporting documentation, that its members are currently responsible for, at a minimum, their regular weekly meetings, victims' hearings, face-to-face hearings for parole-eligible inmates, file reviews for inmates not requiring a face-to-face hearing, voting on cases presented to the full board, reconsideration requests, parole revocation warrants, specialty early release requests, and revocations. Even if the Court accepts as true that these responsibilities are the Board's, I have no information on how much time these tasks consume on a weekly, monthly, or annual basis.

Shane contends that the Board's position is merely a "parade of horribles," unpreserved and lacking support in the record, and that no effort was made in the lower court to make this argument or to establish the facts they rely on. Shane further argues that the Court cannot consider the Board's policy concerns because they fall outside its "bailiwick."

Given that this issue is unpreserved, I decline to address it. I rely on our preservation principle that "our jurisprudence will not permit an appellant to feed one kettle of fish to the [circuit court] and another to the appellate court." *See Elery v. Commonwealth*, 368 S.W.3d 78, 97 (Ky. 2012). Even if the Board believed that conducting its own final revocation hearings was burdensome, the appropriate course of action would be to petition the legislature for a policy change and to change its administrative regulations.

35

## V. Conclusion.

Based on the foregoing, I, too, would reverse the Court of Appeals decision in *Hodge* and affirm its decision in *Shane*. Though the majority reaches this same conclusion, I cannot concur in the result only because the majority reaches its due process decision by virtue of its 13B analysis, which, by its own admission, exempts the Parole Board from its application. Thus, there is no current 13B mechanism in place for the Parole Board to use to adopt exceptions. The current regulatory scheme would have to be rewritten to adopt such procedures.

As currently written, the statutory and regulatory schemes of the Parole Board do not allow for ALJs to conduct final revocation hearings. And there is no mechanism in place to allow for exceptions, even if ALJs were allowed to conduct said hearings. Thus, both Hodge and Shane's due process rights were violated.

Without the proper statutory and regulatory mechanisms in place, what is the Parole Board supposed to do, considering the majority's opinion? As noted, several cases are currently held in abeyance pending the decision in this case. The majority appears to advocate for a 13B-like procedure that is currently absent from the statutory and regulatory schemes. That is not proper, and the majority opinion does not resolve the Parole Board's current dilemma of how to resolve these issues. The better course of action is to interpret the current statutes and regulations as written, as I have done in this dissent, and allow the legislature and the regulatory agency to make the

necessary amendments to allow ALJs to conduct both preliminary and final revocation hearings and adopt a method by which parolees may file exceptions to the ALJ's written findings with the Board, which will accomplish the stated goal. Absent this process, I respectfully dissent.

Conley and Keller, JJ., join.

KELLER, J., DISSENTING:  I agree with the majority's opinion that the use of ALJs to conduct final revocation hearings does not violate due process, given that the parolee is permitted the meaningful opportunity to submit exceptions to the Board, and the Board does not delegate its responsibility to make the final determination regarding revocation.  The Board is afforded the ability to reach "full awareness" of the facts by the ALJ's fact finding accompanied by the parolee's obligations to make exceptions to an incomplete report.  *See Jones v. Bailey*, 576 S.W.3d 128, 144 (Ky. 2019).  To this end, I concur in part.

However, where I diverge from the majority opinion and concur with Justice Goodwine's dissenting opinion is regarding the statutory analysis. Parole Board hearings are exempted from KRS Chapter 13B procedures.  KRS 13B.020(3)(c)2.a.  Yet, nothing bars the Parole Board from borrowing from Chapter 13B, as long as it adheres to the constraints of the Parole Board's enabling statute — KRS Chapter 439.  Indeed, I find that the statutory analysis is subject to multiple interpretations, and both the majority opinion and the dissenting opinions make compelling arguments as to how each arrive at their respective conclusions.  I need not repeat these arguments in detail here, but

37

the argument I find most compelling is that pertaining to KRS 439.320(5). While not explicitly forbidding a delegation to an ALJ of a final parole revocation hearing, it does seem telling that the General Assembly thought to give procedural guidance as it pertains to hearings by the Board but not as it pertains to hearings held by an ALJ. Had the legislature intended to give the Board wide discretion as to when it can delegate its fact-finding duties such that the Board has the statutory authority to delegate this role to a statutorily uncontemplated ALJ, it is suspect that the legislature nonetheless cabins the Board's discretion when those hearings are held by panels of the Board itself.

Lastly, while the argument may not have been preserved by the Board and the record lacks evidence indicating the potential extent of the potential impact, we cannot ignore the practical reality that barring the Parole Board from delegating some of its duties will necessarily increase the Parole Board's workload burden. It has been no secret that parole hearings have already been rushed, and taking away the assistance of an ALJ in the process will only detract from the time each case can be given and will have a deleterious effect on due process. While I cannot join either the majority or dissenting opinion in full, they are both well-written and well-reasoned opinions in this important area. Therefore, I take this opportunity to encourage the General Assembly to either provide clarity if it intends to permit the Parole Board to delegate its fact-finding responsibilities to ALJs, or to consider expanding the statutory cap on the Board's members.

COUNSEL FOR APPELLANT, DOUGLAS HODGE:

Timothy G. Arnold
Joshua R. Bolus
Assistant Public Advocates


COUNSEL FOR APPELLEE, TIMOTHY SHANE

Timothy G. Arnold
Assistant Public Advocate


COUNSEL FOR APPELLANT / APPELLEE, KENTUCKY PAROLE BOARD:

Edward A. Baylous II
Leah Cooper Boggs
Angela T. Dunham
Justice and Public Safety Cabinet